UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ANTHONY FUTIA, JR., and                          :
ROBERT L. SCHULZ,                                :
                              Plaintiffs,        :
                                                 :
v.                                               :          **OPINION AND ORDER**
                                                 :
WESTCHESTER COUNTY BOARD OF                      :          20 CV 1237 (VB)
LEGISLATORS; BEN BOYKIN, Chairman;               :
HARRISON TOWN BOARD; and RON                     :
BELMONT, Supervisor,                             :
                              Defendants.        :
-------------------------------------------------------------x

Briccetti, J.:

Plaintiffs Anthony Futia, Jr., and Robert L. Schulz, proceeding pro se, bring this action

against defendants Westchester County Board of Legislators ("WCBOL"), WCBOL Chairman

Ben Boykin, the Harrison Town ("Town") Board, and Town Supervisor Ron Belmont, alleging

violations of the Guarantee Clause of the U.S. Constitution, the First Amendment, the New York

State Constitution, and other state and local laws.

Now pending are defendants' motions to dismiss the complaint pursuant to Rules

12(b)(1) and 12(b)(6).  (Docs. ##11, 15).

For the following reasons, the motions are GRANTED.

**BACKGROUND**

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-

pleaded factual allegations in the complaint, and draws all reasonable inferences in plaintiffs'

favor, as summarized below.[1]

Plaintiffs are citizens of New York.  At all relevant times, Futia resided in North White

Plains, within Westchester County, and Schulz resided in Queensbury, within Warren County.

I.    Westchester County Board of Legislators

In 2000, WCBOL enacted Local Law ("L.L.") 24-2000, which created the Compensation

Advisory Board ("CAB").  CAB's stated functions include advising WCBOL whether any

changes or adjustments to the compensation paid to members of WCBOL is warranted, and

submitting recommendations to WCBOL regarding same.  Pursuant to L.L. 24-2000, CAB is to

be comprised of seven members appointed by WCBOL in even-numbered years.

Every two years, a new slate of WCBOL members is elected by Westchester County

voters.  On November 5, 2019, seventeen individuals were elected to WCBOL for the 2020–

2021 term.

On November 18, 2019, WCBOL passed two resolutions scheduling a public hearing to

discuss two pieces of proposed legislation:  L.L. 12292-2019, to "provide for payments of

increased compensation for officers appointed for a fixed term and elective officers during their

term of office" (Doc. #1 ("Compl.") ¶ 20), and L.L. 12294-2019, to increase compensation of the

"Members of [WCBOL]."  (Id.).  However, plaintiffs allege WCBOL did not appoint any

---

[1]    Plaintiffs filed along with their complaint a submission styled "Plaintiffs' Affidavit."
(Doc. #2).  Annexed to the affidavit are documents discussed in the complaint and referred to
therein as exhibits.  Although plaintiffs' affidavit is not an allowed pleading, in considering the
motions to dismiss, the Court will consider the documents annexed to the affidavit.  See Fed. R.
Civ. P. 7 (comprising a list of allowed pleadings in federal actions).

Because plaintiffs are proceeding pro se, the Court also considers allegations made for
the first time in plaintiffs' opposition to the motion to dismiss.  See, e.g., Vlad-Berindan v. MTA
N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).  Moreover, because
plaintiffs are proceeding pro se, they will be provided copies of all unpublished opinions cited in
this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

2

members to CAB in 2018, and thus CAB was not convened in 2018 or 2019.  For this reason, plaintiffs allege CAB did not advise WCBOL in 2019 whether any changes or adjustments to the compensation paid to members of WCBOL was warranted, and therefore did not recommend to WCBOL compensation adjustments for the 2020–2021 term.

On December 3, 2019, at the scheduled public hearing, Futia spoke out against the proposed legislation.

On December 9, 2019, WCBOL passed the legislation.  L.L. 12292-2019 made effective salary increases for certain appointed officers and certain elected officers.  L.L. 12294-2019, which took effect January 1, 2020—the start of the next term—increased WCBOL members' salaries from $49,200 to $75,000.

On January 6, 2020, plaintiffs served WCBOL with a petition, alleging violations of federal and state law in connection with the enactment of the above legislation.  (Doc. #2 at ECF 23–25).[2]  The petition demanded WCBOL either repeal the legislation or respond to plaintiffs' complaints.  WCBOL did neither.

II.   Town Budget

On November 5, 2019, the Town held its general election for the 2020–2021 term. Supervisor Belmont was re-elected, and four other individuals were elected to the Town Board. Supervisor Belmont serves as the fifth and final member of the Town Board.

On November 7, 2019, Supervisor Belmont released the proposed Town budget for 2020, which proposed the same salary for his position as he was paid in 2019.  But on November 20, 2019, Supervisor Belmont allegedly updated the proposed budget to include a nearly $30,000

---

[2]   "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

pay increase for his position.  On December 5, 2019, the five-member Town Board unanimously approved the proposed Town Budget, which included the Supervisor's salary increase.

On January 6, 2020, plaintiffs served the Town Board with a petition, alleging violations of federal and state law in connection with the Town Board's approval of Supervisor Belmont's salary increase.  (Doc. #2 at ECF 40–41).  The petition demanded the Town Board repeal and amend the Town budget, or otherwise respond to the petition.  The Town Board did not respond to the petition, or repeal and amend the budget.

III.    Plaintiffs' Claims

Plaintiffs allege nine causes of action:  that (i) WCBOL and Chairman Boykin violated L.L. 24-2000 by increasing WCBOL member compensation without first obtaining an advisory opinion from CAB; (ii) L.L. 12294-2019 is inconsistent with and violates the New York State Constitution; (iii) L.L. 12292-2019 is inconsistent with and violates the New York State Constitution; (iv) WCBOL and Chairman Boykin violated the New York State Constitution by passing the above legislation; (v) the Town's 2020 budget is inconsistent with and violates the New York State Constitution; (vi) the Town Board and Supervisor Belmont violated the New York State Constitution by approving the 2020 budget; (vii) all defendants violated the Guarantee Clause of the U.S. Constitution; (viii) all defendants violated the First Amendment by failing to respond to plaintiffs' petitions for redress; and (ix) all defendants violated Section 801.2 of the New York Education Law.

**DISCUSSION**

I.    Legal Standards

A.    Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  Durant, Nichols, Houston,

Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009).[3]  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011).  A court lacks the judicial power to hear a party's claims when the party does not have standing.  Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 48 (2d Cir. 2014).  The party invoking the Court's jurisdiction bears the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  Broidy Capital Mgmt. LLC v. Benomar, 944 F.3d 436, 443 (2d Cir. 2019).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint."  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).  "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn."  Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).  When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings."  Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court should resolve the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

B.    Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

---

[3]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

II.    Individual Defendants

Defendants argue plaintiffs' claims against Chairman Boykin should be dismissed on grounds of legislative immunity and qualified immunity, and plaintiffs' claims against Supervisor Belmont should be dismissed as duplicative of claims asserted against the Town Board.  In their opposition to defendants' motions to dismiss, plaintiffs state they did not "inten[d] to include Ben Boykin and Ron Belmont as additional defendants, separate from the named governing entities."  (Doc. #26 ("Pls. Mem.") at 13).

Accordingly, the Court dismisses plaintiffs' claims insofar as they are pleaded against Chairman Boykin or Supervisor Belmont.

III.   Subject Matter Jurisdiction

Defendants argue plaintiffs lack standing to bring their claims, and thus the Court lacks subject matter jurisdiction over such claims.

The Court agrees with respect to plaintiffs' claims against the Town Board, and that Schulz lacks standing to bring claims against WCBOL.  However, the Court disagrees with defendants as to Futia's claims against WCBOL.

A.    Standing

"The 'irreducible constitutional minimum' of standing in federal court requires: (1) 'injury in fact'; (2) that is 'fairly traceable' to a defendant's challenged conduct; and (3) that is 'likely to be redressed' by a favorable decision." Mejia v. Time Warner Cable Inc., 2017 WL 3278926, at *7 (S.D.N.Y. Aug. 1, 2017) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  "To support standing, an injury must be both 'concrete and particularized.'" Id. (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016)).  "A 'bare' statutory violation is insufficient to confer constitutional standing absent some 'concrete' harm." Id. (citing Spokeo, Inc. v. Robins, 136 S. Ct. at 1549).

7

Beyond those constitutional requirements, there are certain court-imposed limits to invoking the jurisdiction of the federal courts.  Generally, a plaintiff may assert only his own rights.  Warth v. Seldin, 422 U.S. 490, 499 (1975) ("A federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action.").  Specifically, "[t]he plaintiff must (1) be asserting [his] own legal rights, and not those of a third party, (2) be asserting, in addition to a redressable injury, a particularized grievance, and (3) be asserting a claim that falls within that zone of interests the statute aims to protect or regulate."  Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 58 (2d Cir.1994).

B.    Town Board

Plaintiffs cannot establish standing to maintain their claims against the Town Board because they have not suffered an injury in fact fairly traceable to the Town Board's approval of the 2020 budget.

As a preliminary matter, a plaintiff's federal or state taxpayer status generally is insufficient to establish Article III standing.  See ASARCO Inc. v. Kadish, 490 U.S. 605, 613 (1989) (citing Massachusetts v. Mellon, 262 U.S. 447, 487 (1923)) ("[S]uits premised on federal taxpayer status are not cognizable in the federal courts because a taxpayer's interest in the moneys of the Treasury . . . is shared with millions of others, is comparatively minute and indeterminable," and thus provides "no basis . . . for judicial intervention."); see also DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 345 (2006) (noting the "rationale for rejecting federal taxpayer standing applies with undiminished force to state taxpayers").

However, a municipal taxpayer with a sufficiently "direct and immediate" relationship with the municipality has "standing to challenge allegedly unlawful municipal expenditures" involving "measurable appropriation or loss of revenue."  Bd. of Educ. Mt. Sinai Union Free

Sch. Dist. v. N.Y.S. Teachers Ret. Sys., 60 F.3d 106, 110–111 (2d Cir. 1995).  Municipal

taxpayer standing is not applicable, however, when the plaintiff is not a taxpayer of the

municipality against which his claims are brought.  See, e.g., Altman v. Bedford Cent. Sch. Dist.,

245 F.3d 49, 73–74 (2d Cir. 2001) (holding plaintiffs who did not live in the school district

lacked standing to bring claims against the district); Gheta v. Nassau Cty. Cmty. Coll., 33 F.

Supp. 2d 179, 183 (E.D.N.Y. 1999) (holding a plaintiff lacked standing because she was "no

longer a resident of" the municipality).

  Here, plaintiffs' federal or state taxpayer status is insufficient to establish standing to

maintain claims against the Town Board.[4]  In addition, plaintiffs are not Town residents, and do

not plausibly allege a "direct and immediate" relationship with the municipality.  See Bd. of

Educ. Mt. Sinai Union Free Sch. Dist. v. N.Y.S. Teachers Ret. Sys., 60 F.3d at 110.

Accordingly, plaintiffs cannot demonstrate an injury in fact with respect to the Town Board's

2020 budget approval, and therefore cannot meet the irreducible constitutional minimum of

standing in federal court with respect to their claims against the Town Board.  See Altman v.

Bedford Cent. Sch. Dist., 245 F.3d at 73.

  For the above reasons, plaintiffs lack standing to maintain their claims against the Town

Board, and therefore such claims must be dismissed.[5]

---

[4] To the extent plaintiffs suggest they have standing because "the Town of Harrison will
receive State taxpayer funds from N.Y. State in 2020 that will be co-mingled with Town-
generated funds in its general fund," such allegation is conclusory and fails to establish standing.
(See Compl. ¶ 32).

[5] The Town Board also moves under Rule 12(b)(7) to dismiss the complaint for failure to
join a necessary party.  (See Doc. #13 at 9) ("Because the Town Board is merely an
administrative arm of the Town that cannot sue or be sued, the Complaint against it must be
dismissed.").  However, because the Court is dismissing plaintiffs' claims against the Town
Board, it need not separately address the Rule 12(b)(7) argument.

C.      WCBOL

Schulz cannot establish standing to maintain claims against WCBOL because he is not a

resident of Westchester County and has not suffered an injury in fact fairly traceable to L.L.

12992-2019 and L.L. 12994-2019.  However, at this early stage of proceedings, Westchester

County resident Futia alleges an injury fairly traceable to the legislation.

1.      Schulz

Schulz is not a resident of Westchester County, and does not allege a connection with

Westchester County or WCBOL sufficient to confer standing to challenge WCBOL's enactment

of L.L. 12292-2019 and L.L. 12294-2019, or WCBOL's alleged failure to respond to plaintiffs'

petition.  Moreover, as with plaintiffs' claims against the Town Board, Schulz cannot rely on

federal or state taxpayer status to establish standing to maintain claims against WCBOL.[6]

Accordingly, Schulz lacks standing to maintain claims against WCBOL.[7]

2.      Futia

Futia resides in Westchester County and asserts he is a "Westchester County taxpayer."

(Pls. Mem. at 11).  He claims WCBOL improperly raised board member compensation without

first having solicited advice or a recommendation from CAB as to same.

At this stage of the proceedings, Futia's claims demonstrate an alleged "measurable

appropriation or loss of revenue" bearing on his direct and immediate relationship with the

municipality.  See Bd. of Educ. Mt. Sinai Union Free Sch. Dist. v. N.Y.S. Teachers Ret. Sys., 60

---

[6]      Here, again, plaintiffs cannot sufficiently demonstrate standing by pleading in conclusory fashion that "Westchester County will receive State taxpayer funds from N.Y. State in 2020 that will be co-mingled with [C]ounty-generated taxpayer funds in its general fund."  (Compl. ¶ 25).

[7]      Because Schulz lacks standing to maintain claims against WCBOL and, as noted above, the Town Board, all of plaintiffs' claims must be dismissed insofar as they are pleaded on behalf of Schulz.

F.3d at 111.  Accordingly, the Court declines to dismiss Futia's claims for lack of subject matter

jurisdiction, and will assess whether Futia has plausibly alleged any claims over which this Court

has original jurisdiction.

IV.     Guarantee Clause Claim[8]

Futia claims WCBOL's enactment of L.L. 12292-2019 and L.L. 12294-2019 denied Futia

his constitutional right to a government republican in form, in derogation of the Guarantee

Clause of the U.S. Constitution.  WCBOL argues Futia fails plausibly to state claim premised on

WCBOL's alleged violation of the Guarantee Clause because such claim is nonjusticiable.

The Court agrees with WCBOL.

Article IV, Section 4 of the U.S. Constitution provides in pertinent part:  "The United

States shall guarantee to every State in this Union a Republican Form of Government."

"Although it is 'the province and duty of the judicial department to say what the law is,'

there are instances where 'the judicial department has no business entertaining the claim of

unlawfulness—because the question is entrusted to one of the political branches or involves no

judicially enforceable rights'; such a claim 'is said to present a "political question" and to be

nonjusticiable—outside the courts' competence and therefore beyond the courts' jurisdiction.'"

Schulz v. New York, 2019 WL 3975670, at *5 (N.D.N.Y. Aug. 22, 2019) (quoting Rucho v.

Common Cause, 139 S. Ct. 2484, 2494 (2019)).

Challenges to state action premised on violations of the Guarantee Clause traditionally

present nonjusticiable political questions.  Rucho v. Common Cause, 139 S. Ct. at 2506 ("The

Court has several times concluded . . . that the Guarantee Clause does not provide the basis for a

---

[8]      Courts have referred to Article IV, Section 4 of the U.S. Constitution as both the "Guarantee Clause" and the "Guaranty Clause."  See U.S. ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester County, 712 F.3d 761, 775 (2d Cir. 2013); Padavan v. United States, 82 F.3d 23, 28 (2d Cir. 1996).

justiciable claim."); <u>see</u> <u>also</u> <u>Baker v. Carr</u>, 369 U.S. 186, 228–29 (1962).  Moreover, the Second

Circuit has concluded a challenge under the Guarantee Clause to certain municipal conduct

presents a nonjusticiable issue when the "residents of the County remain able to choose their

own officers and pass their own laws."  <u>U.S. ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc.</u>

<u>v. Westchester County</u>, 712 F.3d at 775.

Futia fails plausibly to state a justiciable Guarantee Clause claim.  He fails adequately to

allege voters of Westchester County were, or continue to be, deprived of their ability to choose

their own representatives and pass their own laws, and thus have been deprived of a government

republican in form.  Simply put, his distaste for certain legislation, alone, does not give rise to a

justiciable constitutional claim.  Further, "while it is possible that 'perhaps not all claims under

the Guarantee Clause present nonjusticiable political questions,'" <u>Padavan v. United States</u>, 82

F.3d at 28 (quoting <u>New York v. United States</u>, 505 U.S. 144, 185 (1992)), the complaint in this

action is devoid of any indicia of a justiciable Guarantee Clause claim.

Accordingly, Futia's Guarantee Clause claim must be dismissed.

V.    <u>First Amendment Claim</u>

WCBOL argues Futia fails plausibly to allege a First Amendment claim because the

constitutional right to petition the government does not include a right to a response.

The Court agrees.

"The First Amendment protects a right to . . . petition the government for the redress of

grievances."  <u>Ayala-Rosario v. Westchester County</u>, 2020 WL 3618190, *5 (S.D.N.Y. July 2,

2020).

However, [t]he right to petition in general guarantees only that individuals have a right to

communicate directly to government officials . . . .   It does not guarantee, as plaintiff contends,

. . . that an elected official will necessarily act a certain way or respond in a certain manner to

requests from his constituents." Kittay v. Giuliani, 112 F. Supp. 2d 342, 354 (S.D.N.Y. 2000) (citing Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 285 (1984)).  Indeed, "[n]othing in the First Amendment or in [the Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."  Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. at  285; see also Smith v. Ark. State Highway Emps., Local 1315, 441 U.S. 463, 465 (1979) (noting "the First Amendment does not impose any affirmative obligation on the government to listen, [or] to respond.").

Here, Futia exercised his right to petition WCBOL to redress his grievances when, on December 3, 2019, he spoke out at a public hearing respecting L.L. 12292-2019 and L.L. 12294-2019, and again on January 6, 2020, when he submitted a written petition to WCBOL.  As Futia "does not allege [WCBOL] prevented him from communicating any grievance," see Kittay v. Giuliani, 112 F. Supp. 2d at 354, he fails plausibly to allege WCBOL violated his constitutional right to petition the government.

Accordingly, Futia's First Amendment claim must be dismissed.

VI.   State Law Claims

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).

Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over Schulz's and Futia's state law claims.

VII.   <u>Leave to Amend</u>

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires."  Liberal application of Rule 15(a) is warranted with respect to <u>pro</u> <u>se</u> litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim."  <u>Matima v. Celli</u>, 228 F.3d 68, 81 (2d Cir. 2000).  District courts "should not dismiss [a <u>pro</u> <u>se</u> complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000).

However, leave to amend may "properly be denied for . . . 'futility of amendment.'" <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 191 (2d Cir. 2008) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  This is true even when a plaintiff is proceeding <u>pro se</u>.  <u>See</u> <u>Terry v. Incorporated Village of Patchogue</u>, 826 F.3d 631, 633 (2d Cir. 2016).  An amendment to a pleading is futile if the Court would lack subject matter jurisdiction over the proposed claim, <u>see</u> <u>Mortimer Off Shore Serves, Ltd., v. Federal Republic of Germany</u>, 615 F.3d 97, 99 (2d Cir. 2010), <u>cert.</u> <u>denied</u>, 562 U.S. 1249 (2011), or "if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)."  <u>Lucente v. Int'l Bus. Machs. Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002).

Here, plaintiffs' submissions, even liberally construed, contain no allegations suggesting plaintiffs have actionable claims against defendants that plaintiffs "inadequately or inartfully pleaded" and "should therefore be given a chance to reframe."  <u>See</u> <u>Cuoco v. Moritsugu</u>, 222 F.3d at 112.  The problems with plaintiffs' federal claims are substantive, and better pleading will not cure them.  For these reasons, amendment would be futile.

**CONCLUSION**

The motions to dismiss are GRANTED.

The Clerk is instructed to terminate the motions (Docs. ##11, 15) and close this case.

Dated: August 6, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

15